UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES A. SHULER           :
2211 14th Street, NE
Washington, D.C. 20018       :

      Plaintiff,           :

v.                                      :

UNITED STATES OF AMERICA,    :
                                                                Civil Action No.

SERVE: Kenneth L. Wainstein       CASE NUMBER 1:05CV02207
       U.S. Attorney for the
       District of Columbia              JUDGE: Ricardo M. Urbina
       Judiciary Center
       555 Fourth St., N.W.             DECK TYPE: Personal Injury/Malpractic
       Washington, D.C. 20530          DATE STAMP: 11/■/2005

and                                   :

   Hon. Alberto Gonzales
   Attorney General of              :
   the United States of America
   U.S. Department of Justice       :
   950 Pennsylvania Avenue, NW
   Washington, DC 20530-0001        :

      Defendant.

**COMPLAINT FOR NEGLIGENCE**
(Personal Injuries and Paralysis Caused by State Created Danger:
Negligence and Federal Tort Claims Act)

**JURISDICTION AND VENUE**

1.    Jurisdiction is conferred upon this Court pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 <u>et seq</u>.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1346(b) as the claims are brought against the United States for money damages, and 28 U.S.C. § 1391, as the cause of action arose in the District of Columbia.

3. On or about December 12, 2001, a Standard Form 95 Claim was filed on behalf of the Plaintiff with the United States c/o the Office of the General Counsel, Federal Bureau of Investigation, the United States Department of Justice, the Drug Enforcement Administration, and the United States Attorney's Office for the District of Columbia. The claim listed damages in the amount of Twenty Million Dollars ($20,000,000.00). A copy of the Plaintiff's Standard Form 95 Claim is attached hereto.

4. On or about January 10, 2002, counsel for Plaintiff received a letter acknowledging receipt of Plaintiff's Administrative Tort Claim. Due to the multiple Department of Justice components involved, the U.S. Department of Justice, Civil Division, elected to retain responsibility for the claim. The claim was assigned to Aleta Bodolay, a Paralegal Specialist in the Torts Branch, Civil Division, for handling. A copy of Ms. Bodolay's letter is attached hereto.

5. The United States Department of Justice denied Plaintiff's claim on May 11, 2005. A copy of Ms. Bodolay's letter is attached hereto.

### PARTIES

6. At all relevant times herein, Plaintiff Charles Shuler was an adult resident and citizen of the District of Columbia.

7. Defendant the United States of America (hereinafter "USA"), is subject to suit under the Federal Tort Claims Act for the negligent, wanton, willful or wrongful acts

- 3 -

or omissions of employees of the Federal Bureau of Investigation, the United States Department of Justice, the Drug Enforcement Agency, the United States Attorney's Office for the District of Columbia (hereinafter "law enforcement authorities") and their relevant employees and/or agents of each agency (hereinafter "relevant agents").

## FACTS

8. At all relevant times herein, the Plaintiff Charles A. Shuler was a confidential informant, working undercover to gather information on criminal activities such as drug trafficking in the District of Columbia.

9. The Plaintiff had a special relationship with law enforcement authorities, as he assisted the Federal Bureau of Investigation, the United States Department of Justice, the Drug Enforcement Agency, the United States Attorney's Office for the District of Columbia ("law enforcement authorities") and their relevant employees and/or agents of each agency ("relevant agents") as a confidential informant. As an informant, the Plaintiff assisted and provided information for criminal investigations, including investigations into the activities of a reputed drug-trafficking boss: Mr. Kevin L. Gray.

10. It was crucial to the Plaintiff's safety that the fact that he was a confidential informant remain secret, particularly from the targets of criminal investigations that Plaintiff was providing information concerning.

11. Plaintiff Shuler justifiably relied on the assurances of the law enforcement authorities and their relevant agents that they would keep his identity as an informant confidential, that they would keep him safe even if his identity did not remain

confidential, and that they would protect him against the targets of their investigations and/or the inherent dangers created by the Defendant.

12. These assurances of confidentiality, safety, and protection were false and were made by the agents of the Defendant, negligently, recklessly, and with conscience indifference to the fate of Plaintiff Shuler.

13. As a direct result of the negligence, gross negligence, recklessness, and/or willing or wanton conduct of the employees and/or agents of the law enforcement authorities, all of which occurred during the course and scope of their employment and in violation of national standards of care, the identity of Plaintiff Schuler as an informant was not kept confidential. Instead, the Plaintiff's identity as an informant was exposed to others, including Mr. Gray and his reputed accomplices, Mr. Frank Howard, Mr. Keith McGill and Mr. Timothy Handy, a.k.a., "Mad Dog Handy".

14. The aforesaid negligence, grossly negligence, reckless, and/or willful and wanton acts or omissions of these state actors created and/or increased the danger to Plaintiff Schuler from criminal suspects, including Mr. Gray, Mr. Howard, Mr. McGill and Mr. Handy.

15. In addition, the aforesaid law enforcement authorities and their relevant agents with whom Plaintiff Schuler had a special relationship with, failed to protect Plaintiff and to keep him safe despite their promises of confidentiality, safety and protection.

16. In or around the Summer and Fall of 1999, Plaintiff Charles A. Schuler provided assistance to employees or agents of law enforcement authorities with respect to

certain criminal investigations and operations, including investigations into the activities of Mr. Gray.

17. As a part of his work for the law enforcement authorities, the Plaintiff reported the whereabouts of Mr. Gray to the FBI. The Plaintiff had warned the FBI not to apprehend Mr. Gray immediately because only the Plaintiff had knowledge of Mr. Gray's location. Apprehending Mr. Gray soon thereafter would indicate to Mr. Gray that the Plaintiff was a government informant. Against the Plaintiff's warning, the law enforcement authorities, including but not excluding, the FBI apprehended Mr. Gray at that same location immediately after receiving such information from Plaintiff. This action by Defendant created an inherent danger to Plaintiff.

18. The authorities' actions disclosed to Mr. Gray that the Plaintiff was an informant. Upon information and belief, shortly thereafter, Mr. Gray ordered that the Plaintiff be killed in retaliation.

19. After Mr. Gray was arrested, the FBI agent in charge, Mr. Kyle Fulmer, ordered Plaintiff to attempt to locate and assist the FBI in apprehending Mr. Gray's top "lieutenants" as well. The Plaintiff initially refused, however, Agent Fulmer affirmatively reassured Plaintiff that his identity as an informant was confidential, and that the United States Government, including the FBI, would protect Plaintiff.

20. Based on these assurances, Plaintiff made attempts to arrange for illegal narcotic exchanges with these "lieutenants," but these "lieutenants" refused to make such exchanges.

21. One of Mr. Gray's top "lieutenants" would only make the illegal exchange if the Plaintiff took off his shirt to prove that he had no wires on him, and another top "lieutenant" refused to speak with Plaintiff.

22. Despite these obvious dangers created by Defendant, the FBI continued to force and/or affirmatively encourage and persuade the Plaintiff to seek such illegal narcotic exchanges.

23. In light of the dangerous work Plaintiff did to provide confidential information concerning Mr. Gray and in light of Plaintiff's requests for protection, the Plaintiff had a justifiable expectation of protection. Following the arrest of Mr. Gray, the Plaintiff made specific requests for protection from Mr. Gray and his known associates, but he did not receive such protection.

24. On December 15, 1999, on or about two weeks after the FBI apprehended Mr. Gray, Plaintiff was shot in his back at or near 1456 Smith Place, SE, Washington, DC, while working on behalf of the FBI. The shooter is believed to have been Mr. McGill, acting on the orders of Mr. Gray. Plaintiff is permanently paralyzed as a result of this gunshot wound.

25. When the Plaintiff was shot, he was actively working on behalf of the FBI and performing work Agent Fulmer had requested Plaintiff to do. There was a direct and continuing contact between the Plaintiff and a governmental agency or official. There was also a justifiable reliance on the part of Plaintiff that Defendant would protect Plaintiff. Plaintiff's involvement as an informant created a special relationship between

the Plaintiff and Defendant. Thus, the law enforcement authorities were responsible for his safety and protection at that time.

## COUNT I
### (Negligence)

26. The Plaintiff hereby incorporates all of the above numbered paragraphs and further alleges as follows:

27. The Defendant owed a duty of care to the Plaintiff to conceal his identity as an informant, to provide protection to the Plaintiff consistent with the national standards of care, to avoid placing Plaintiff in inherent danger, to inform Plaintiff of critical information concerning the danger to Plaintiff created by the Defendant's acts or omissions, to provide advisement and supervision of Plaintiff's activities as an informant consistent with the national standards of care and protocol developed and followed by the listed authorities and agents, and to follow safety procedures surrounding the supervision and activity of informants.

28. The Defendant, through its agencies, authorities, employees, servants, and/or agents, directly and vicariously, breached said duties of care to Plaintiff. Examples of Defendant's breaches of said duties, include but not exclude, conducting an operation that it knew or should have known would disclose the Plaintiff's identity, failing to take reasonable and appropriate steps to protect Plaintiff from the dangers created by the Defendant, failing to follow the appropriate national standards of care, failing to advise the Plaintiff of the dangers created by the Defendant, and forcing Plaintiff to continue work as an informant although his identity had become known.

29.  As a direct and proximate result of the Defendant's negligent acts and/or omissions, the Plaintiff was seriously and permanently physically, psychologically, and emotionally injured. Plaintiff was paralyzed as a direct and proximate result of the Defendant's negligence.

30.  As a further direct and proximate result of Defendant's negligent acts and/or omissions, the Plaintiff has incurred substantial damages, including severe pain, suffering and mental anguish, and has incurred substantial expenses for medical care and treatment and will continue to incur substantial expenses in the future for medical care and treatment, and has sustained a loss of wages and/or wage-earning capacity.

Wherefore, in light of the foregoing, the Plaintiff demands judgment against Defendant United States of America, in the full and just amount of Twenty Million Dollars, ($20,000,000.00) plus interests and costs.

Respectfully submitted,

REGAN, HALPERIN & LONG, PLLC

By: _____
Patrick M. Regan, Esquire
Thanos Basdekis, Esquire
Paul J. Cornoni, Esquire
1919 M. Street, N.W. Suite 350
Washington, DC 20036-3521
Ph: (202) 463-3030
*Attorneys for Plaintiff*