UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHARLES SHULER,                    :
                                   :
            Plaintiff,             :
                                   :    Civil Action No.:    05-2207 (RMU)
       v.                          :
                                   :    Document No.:    10
UNITED STATES OF AMERICA,          :
                                   :
            Defendant.             :

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION TO DISMISS

## I.  INTRODUCTION

The plaintiff, Charles Shuler, is permanently paralyzed after surviving a gunshot wound

to the back.  He claims that Kevin Gray, a convicted first degree murderer, ordered his murder

after discovering that Shuler worked as a confidential informant for the Federal Bureau of

Investigation and assisted law enforcement authorities in Gray's apprehension.[1]  He brings this

suit against the United States arguing that his identification as a government informant stemmed

from the government's negligence in protecting his identity and in protecting him from Gray and

Gray's criminal entourage.  The defendant now moves to dismiss this case arguing that it is

entitled to sovereign immunity.  Because the defendant's conduct constitutes discretionary

functions, it is entitled to sovereign immunity.  Accordingly, the court grants the defendant's

motion to dismiss.

---

[1]     On January 9, 2003, Kevin Gray was convicted by a jury of eighty counts of criminal
behavior including twenty counts of first degree murder while armed, numerous counts
of distribution of cocaine, firearms offenses, and witness tampering.  Def.'s Mot., Att. 1.
On May 11, 2005, Judge Lamberth entered judgment in Gray's case and sentenced him
to over forty life sentences.

Case 1:05-cv-0220/-RMU    Document 16    Filed 08/21/2006    Page 2 of 12

## II.  BACKGROUND

For purposes of this motion, the court assumes the following to be the pertinent facts in this case.  The plaintiff served as a confidential informant for the FBI, the Drug Enforcement Agency, and the United States Attorney's Office for the District of Columbia.  Compl. ¶¶ 8, 9. The plaintiff assisted these law enforcement agencies in various criminal investigations, including the investigation of Kevin Gray.  *Id.* ¶ 9.  In early December 1999, the plaintiff informed the FBI of Gray's whereabouts, but "warned the FBI not to apprehend Mr. Gray immediately because only the Plaintiff had knowledge of Mr. Gray's location."[2]  Compl. ¶ 17. The plaintiff was concerned that if the FBI immediately arrested Gray, Gray would know that the plaintiff was a government informant.  *Id.*  Immediately upon receiving Gray's location from Shuler, law enforcement officials arrested Gray.  *Id.*  These actions effectively "disclosed to Mr. Gray that the Plaintiff was an informant."  *Id.* ¶ 18.  The plaintiff then assisted the FBI in locating and apprehending Gray's lieutenants.  *Id.* ¶ 19.  The government made "assurances" to the plaintiff that they would protect him from these individuals.[3]  *Id.* ¶¶ 19, 20.

---

[2]    Critical to the plaintiff's theory of causation is the assumption that Gray believed that the plaintiff was the sole individual with knowledge of his location.  Although the plaintiff did not allege this point in his complaint, the court will give the plaintiff the benefit of the doubt and presume as much.

[3]    The plaintiff's complaint contains an inconsistency.  First, the plaintiff avers that the government made assurances to him that they would provide him protection from Gray and his gang.  Compl. ¶¶ 19, 20.  Later, however, the plaintiff indicates that his "justifiable expectation of protection" stemmed not from the government's explicit assurances but "[i]n light of the dangerous work Plaintiff did to provide confidential information concerning Mr. Gray and in light of Plaintiff's requests for protection." Compl. ¶ 23.  The plaintiff also alleges that despite making "specific requests for protection from Mr. Gray and his associates . . . he did not receive such protection." Compl. ¶ 23.  Although a plaintiff can "plead himself out of court" by alleging or stating too much in his complaint, *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1116 (D.C. Cir. 2000), the court will presume that the plaintiff alleges that the government explicitly assured him of protective services.

2

Case 1:05-cv-0220,-RMU    Document 16    Filed 08/21/2006    Page 3 of 12

On December 15, 1999, roughly two weeks after the authorities apprehended Gray, the plaintiff was shot in the back. Compl. ¶ 24. The plaintiff alleges that the shooter was acting on Gray's orders. *Id.* Although the plaintiff survived the shooting, he is permanently paralyzed. *Id.* The plaintiff argues that, as a matter of law, his involvement as an informant "created a special relationship" between himself and federal law enforcement which made the authorities "responsible for his safety and protection." Compl. ¶ 25.

The plaintiff argues that the defendant "owed a duty of care to the Plaintiff to conceal his identity as an informant, to provide protection to the Plaintiff consistent with national standards of care [and] to avoid placing Plaintiff in inherent danger." Compl. ¶ 27. The plaintiff also alleges that the defendant owed the plaintiff a duty of care "to inform [him] of critical information concerning the danger . . . created by the Defendant's acts or omissions, [and] to provide advisement and supervision of Plaintiff's activities as an informant consistent with the national standards of care and protocol" of federal law enforcement authorities. *Id.*

The defendant filed a motion to dismiss under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendant argues that the plaintiff's complaint is barred by the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2871 *et seq.* and the private analogue requirement for suits brought under that act. Def.'s Mot. The court turns now to a legal analysis of this motion.

### III. ANALYSIS

The defendant moves to dismiss under both Federal Rule of Civil Procedure 12(b)(1), which concerns the court's subject-matter jurisdiction, and Rule 12(b)(6), which tests the legal

sufficiency of the complaint. Def.'s Mot. at 1. Because courts should consider Rule 12(b)(1)

jurisdictional challenges before Rule 12(b)(6) challenges, *United States ex rel. Settlemire v. Dist.*

*of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler &*

*Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)), and because an

analysis under Rule 12(b)(1) is dispositive, the court does not consider the defendant's challenge

under Rule 12(b)(6) but proceeds solely under Rule 12(b)(1).

### A.    Legal Standard for Rule 12(b)(1) Motion to Dismiss

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies

outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen.*

*Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a

court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no

action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v.*

*Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v.*

*Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack

of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of

establishing that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction

only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338,

343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Case 1:05-cv-0220.-RMU    Document 16    Filed 08/21/_.J6    Page 5 of 12

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Moreover, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, to determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## B. The Court Grants the Defendant's Motion to Dismiss

The plaintiff's claims are predicated on the FTCA, which constitutes a limited waiver of the federal government's sovereign immunity. *Id.* ¶ 1. The defendant claims that two exceptions to the FTCA apply and that the defendant, therefore, is entitled to sovereign immunity in this case. Def.'s Mot. at 5.

### 1. Legal Standard for Federal Tort Claims Act

The FTCA "grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims." *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b) & 2674). To protect the government from liability "that would seriously handicap efficient government operations," the waiver of sovereign immunity is subject to several exceptions. *Beins v. United States*, 695 F.2d 591, 611 (D.C. Cir. 1982) (internal quotations omitted); 28 U.S.C. § 2680. If any one of the

exceptions applies, the district court lacks subject-matter jurisdiction. 28 U.S.C. § 2680; *Sloan*,

236 F.3d at 759.

An oft-cited exception to the FTCA's sovereign-immunity waiver is the discretionary-

function exception, which bars claims "based upon the exercise or performance or the failure to

exercise or perform a discretionary function or duty on the part of a federal agency or an

employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. §

2680(a). To determine whether the discretionary-function exception applies, courts engage in a

two-part inquiry. *Macharia*, 334 F.3d at 65 (citing *United States v. Gaubert*, 499 U.S. 315, 322-

23 (1991)). First, the court must determine whether a federal statute, regulation, or policy

"specifically prescribes a course of action for an employee to follow . . . [leaving] the employee

[] no rightful option but to adhere to the directive." *Id.* If so, the challenged action does not

involve "an element of judgment or choice" and does not fall within the discretionary-function

exception. *Id.* Second, the court must evaluate whether the challenged action "is of the kind that

the discretionary function exception was designed to shield" from judicial second-guessing:

namely, governmental actions and decisions based on public-policy considerations. *Id.* If the

action is not grounded in public-policy concerns, it is not immunized by the discretionary-

function exception. *Appleton v. United States*, 69 F. Supp. 2d 83, 92 (D.D.C. 1999).

To assure itself of subject-matter jurisdiction, the court must determine the basis for a

plaintiff's FTCA claims, keeping in mind that "[a] litigant cannot circumvent the [FTCA] by the

simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to

which the United States remains immunized." *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d

1151, 1160 n.16 (D.C. Cir. 1985) (quoting *Johnson v. United States*, 547 F.2d 688, 691-92 (D.C.

Cir. 1976)).  Toward that end, the court "must review the complaint to determine what actions

allegedly caused the injuries."  *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (applying the

discretionary-function exception); *see also Kugel*, 947 F.2d at 1507 (noting in applying the

intentional-tort exception that the court "must scrutinize the alleged cause of [an FTCA

plaintiff's] injury").  Although the court must accept the plaintiff's version of the facts as true,

the court need not accept "the plaintiff's *characterization* of the facts."  *Fisher Bros. Sales, Inc.*

*v. United States*, 46 F.3d 279, 286 (3d Cir. 1995) (emphasis in original); *see also Gen. Dynamics*

*Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998) (citing *Fisher Bros.* with approval).

## 2.  The Plaintiff's FTCA Claims are Barred Because the Alleged Conduct is Based Upon the Exercise of Discretionary Functions

According to the plaintiff's complaint, the defendant's negligence led to his paralysis.

Although the plaintiff alleges only negligence, his claims really arise from two separate theories

of negligence.  First, the plaintiff claims that the defendant negligently apprehended Gray at such

time as to reveal Shuler's identity as a confidential informant.  Compl. ¶ 10.  Second, the plaintiff

claims that the defendant failed to provide him with adequate protection despite an affirmative

duty to do so.  *See* Compl. ¶¶ 26-28.

The plaintiff recognizes that the court must first consider whether a federal statute,

regulation, or policy "specifically prescribes a course of action for an employee to follow . . .

[leaving] the employee [] no rightful option but to adhere to the directive.  *Macharia*, 334 F.3d at

65 (citing *Gaubert*, 499 U.S. at 322-23); Pl.'s Opp'n at 11.  Nevertheless, the plaintiff provides

no argument supporting a claim that the defendant was statutorily (or through regulation or

policy), required to take a specific course of action.  Indeed, the court is aware of no statute,

regulation, or policy which prescribes a specific course of action at play in the instant case,

7

namely, when to arrest a dangerous criminal suspect or prescribing specific duties on law enforcement with regard to government witnesses.[4]

With no statute, regulation, or policy prescribing a specific course of action, the court next evaluates whether the challenged action "is of the kind that the discretionary function exception was designed to shield" from judicial second-guessing: namely, governmental actions and decisions based on public-policy considerations. *Macharia*, 334 F.3d at 65. For the reasons stated below, the court concludes that the decision as to when to arrest a criminal suspect and the decision to protect a government informant constitute decisions "of the kind that the discretionary function exception was designed to shield." *Macharia*, 334 F.3d at 65.

### a.     The Decision as to When to Arrest Criminal Suspect Constitutes a Discretionary Function under the FTCA

The plaintiff reported the whereabouts of Gray to the FBI in his role as a government informant. Compl. ¶ 17. Although the plaintiff cautioned the defendant that he was the only person with knowledge of Gray's specific location at that time, the FBI immediately apprehended Gray. *Id.* The plaintiff believes that the FBI's actions revealed to Gray that the plaintiff was a government informant. *Id.* The government contends that the decision "when to arrest a violent and dangerous person who may kill again if not arrested immediately" constitutes "an integral

---

[4]     Under Department of Justice guidelines, government witnesses have the right to "reasonable protection from a suspected offender and persons acting in concert with or at the behest of the suspected offender." Attorney General Guidelines for Victim and Witness Assistance (2005) (IV)(3)(A)(1)(a), *available at* http://www.ovc.gov/publications/infores/agg2000/welcome.html. These regulations only provide for "reasonable" protection, which inherently includes a great deal of discretion and may give way when legitimate community safety concerns are at play. *Ochran v. United States*, 117 F.3d 495, 500 (11th Cir. 1997) (recognizing that the guidelines are "laden with discretionary language").

Case 1:05-cv-0220.-RMU    Document 16    Filed 08/21/2006    Page 9 of 12

part of the police function" and, therefore, is "grounded within the discretion of government and police officials." Def.'s Mot. at 10. The court agrees.

Determining when to arrest an individual concerns a policy judgment involving prosecutorial discretion in curbing criminal behavior. *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) (ruling that "the function of determining when and how to execute an arrest warrant is quintessentially a discretionary function, involving choices and judgments that are grounded in policy considerations"). It involves considerations of community safety. *Id.* As with the prosecutorial function, law enforcement's arrest function "brings to bear the enormous power of the state against individuals." *Gray v. Bell*, 712 F.2d 490, 497 (D.C. Cir. 1983) .

"[T]he weight of [prosecutorial power] and the general opprobrium of the criminal sanction combine to create a unique potential for vengeful counter suits." *Id.* Permitting a lawsuit which hinges on law enforcement's arrest decision, such as in this case, risks clouding law enforcement's decision-making process with considerations well apart from the function society entrusts it to perform. *Mesa*, 837 F. Supp. at 1214 (stating that "[t]he federal government's decisions concerning enforcement of its criminal statutes comprise a part of its pursuit of national policy. If the government could be held liable for prosecuting or failing to prosecute such a case, its choices in this area could quite conceivably be affected by such a suit"); *see also, Gray*, 712 F.2d at 511 (stating that "courts should not subject the sovereign to liability where doing so would inhibit vigorous decisionmaking by government policymakers"). The FBI's decision to arrest Gray at the time and manner of its choosing is a discretionary choice subject to policy judgments. *Id.* As such, the FTCA's discretionary function exception applies. The FTCA was designed to protect the government from judicial second guessing into this type

of discretion-laden decision.[5] *Macharia*, 334 F.3d at 65 (citing *Gaubert*, 499 U.S. at 322-23

(1991).

### b.    The Decision to Protect a Government Informant Constitutes a Discretionary Function under the FTCA

The plaintiff's second theory of negligence stems from the defendant's failure to provide

the plaintiff with adequate protection from Gray and his associates.  Compl. ¶ 23.  The plaintiff

claims that he had a "justifiable expectation of protection" and that "he did not receive such

protection." *Id.*  In support of its motion to dismiss, the defendant cites *Ochran v. United States*,

117 F.3d 495 (11th Cir. 1997) for the proposition that a "law enforcement official's decision as

to how to protect a victim and how to react against the threatening individual are well-within the

discretionary function exception and claims based upon those theories are barred." Def.'s Mot.

at 8.  The plaintiff, on the other hand, argues that under *Ochran*, a law enforcement agency may

be liable under the FTCA if the agency voluntarily assumed a specific duty to protect the

informant.  Pl.'s Opp'n at 15 (citing *Ochran*, 117 F.3d at 501 n.7).  The defendant has the better

of the two arguments.

In *Ochran*, the court considered a government informant's claim under the FTCA for

failure of the government to offer her adequate protection from her ex-boyfriend, who she had

reported to law enforcement authorities as being involved in drug-trafficking.  *Ochran*, 117 F.3d

at 498.  In considering the Attorney General Guidelines for Victims and Witnesses Assistance,

---

[5]     The court notes that law enforcement's arrest decisions are subjected to checks and balances built into the judicial system. *See Gray v. Bell*, 712 F.2d 490, 498 (D.C. Cir. 1983) (recognizing that for prosecutorial discretion, "built-in safeguards diminish the need for private redress").  As with prosecutorial abuse, "[i]nherent in the judicial process are checks that serve to restrain" law enforcement abuses, "and any abuse that does occur is subject to various self-remedying mechanisms of the adversarial process." *Id.*

the court noted that "[e]ven though the Guidelines require the [prosecutor] to arrange for the reasonable protection of a victim who is threatened, they did not specify *how* this protection is to be provided." *Id.* at 500 (emphasis in original). For this reason, the court concluded that "the decision of the [prosecutor] as to how to protect a victim that has been threatened by a suspected offender is susceptible to policy analysis." *Id.* (recognizing that in making this decision, the prosecutor will necessarily balance such non-justiciable policy factors as "the victim's need for protection in light of the severity and credibility of the threat, the allocation of limited government resources, and the government's dealings with the suspected offender"). The government is entitled to wide discretion in the extent of protection it offers to cooperators. *Piechowicz v. United States*, 885 F.2d 1207, 1211-1212 (4th Cir. 1989).

The plaintiff cites *Ochran* for the proposition that the government should be subjected to liability because it voluntarily undertook to protect him. Pl.'s Opp'n at 15. In *Ochran*, the court noted that the government may be liable for actions if it "voluntarily assume[s] a specific duty that involved no policy judgments." *Ochran*, 117 F.3d at 506 n.7. Here, the plaintiff alleges that the defendant "repeatedly promised to protect" the plaintiff. Pl.'s Opp'n at 16. As the *Ochran* court noted, however, a generalized promise to provide protection to government witnesses is insufficient to constitute a waiver under the FTCA because it does not contain a specific promise involving no policy judgments. *Ochran*, 117 F.3d at 506 n.7. The plaintiff's generalized allegation of a promise to provide protection does not fit within the narrow exception the *Ochran* court contemplated. *Id.* (stating that a waiver might occur, by way of example, if the government explicitly promised to station U.S. Marshals at the witness's door but then failed to do so due to the government's negligence). Absent any claim of an explicit promise to provide a specific type

11

of protection, the defendant's protective services constitute a discretionary function under the

FTCA.  28 U.S.C. § 2680(a).  Accordingly, the FTCA does not waive sovereign immunity as to

this claims.  *Id.*


## IV.    CONCLUSION

For the foregoing reasons, the court grants the defendant's motion to dismiss.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued on this

21st day of August, 2006.


RICARDO M. URBINA
United States District Judge


12

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES SHULER,                        :
                                       :
            Plaintiff,                 :
                                       :        Civil Action No.:      05-2207 (RMU)
        v.                             :
                                       :        Document No.:          10
UNITED STATES OF AMERICA,              :
                                       :
            Defendant.                 :

## ORDER

### GRANTING THE DEFENDANT'S MOTION TO DISMISS

For the reasons stated in this court's Memorandum Opinion separately and

contemporaneously issued this 21st day of August, 2006, it is hereby

**ORDERED** that the defendant's motion to dismiss is **GRANTED**.

**SO ORDERED**.


                                        RICARDO M. URBINA
                                        United States District Judge